UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMON CAYETANO,

                    Plaintiff,

       -against-

FEDERAL EXPRESS CORPORATION d/b/a
FEDEX,

                    Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___7/6/2022___
```

19 Civ. 10619 (AT)

**<u>ORDER</u>**

ANALISA TORRES, United States District Judge:

       Plaintiff, Ramon Cayetano, brings this action against Defendant, Federal Express Corporation ("FedEx"), alleging claims of failure to accommodate, disability discrimination, and retaliation in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 *et seq.*; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* Compl. ¶ 4, ECF No. 3.  FedEx moves for summary judgment on all claims, Def. Mem., ECF No. 46, and Cayetano cross-moves for partial summary judgment on his federal ADA claims for failure to accommodate and disability discrimination, Pl. Mem., ECF No. 43.  For the reasons stated below, FedEx's motion for summary judgment is GRANTED as to Cayetano's ADA retaliation and constructive discharge claims, and his NYSHRL and NYCHRL claims, and otherwise DENIED.  Cayetano's cross-motion for partial summary judgment is DENIED.

## BACKGROUND[1]

Cayetano began working at FedEx in December 2000, as a Department of Transportation ("DOT") handler.  Pl. 56.1 ¶ 68, ECF No. 45.  DOT handler duties include physically demanding tasks, such as driving FedEx trucks, and loading, unloading, and scanning documents and boxes. *Id.* ¶ 69.  The job description for this position includes, among its requirements, the "ability to lift 75 lbs," and being "able to maneuver packages of any weight above 75 lbs with appropriate equipment and/or assistance from another person."  ECF No. 51-4.  When Cayetano first applied to work at FedEx, he signed an employment agreement stating that any legal action brought by him against FedEx must be commenced "within the time prescribed by law or 6 months from the date of the event forming the basis" of the lawsuit, whichever "expires first."  Def. 56.1 ¶ 25, ECF No. 47.

Cayetano has taken medical leave from his position approximately four times.  Pl. 56.1 ¶ 70.  In 2015, Cayetano began experiencing pain in his left shoulder.  *Id.* ¶ 80.  Cayetano states that this pain made it difficult for him to lift and carry heavy items.  *See* Cayetano Dep., 55:15–56:6, ECF No. 47-4.  Following consultation with his doctors, Cayetano elected to undergo surgery to repair a torn rotator cuff in the affected shoulder.  Pl. 56.1 ¶ 85.  In June 2016, Cayetano informed his Human Capital Management Program Advisor ("HCMP Advisor"), James Bolen, that he needed to take medical leave to address this condition.  *Id.* ¶ 86.  HCMP Advisors like Bolen handle issues related to injury, illness, medical leave, and accommodations. *See* Bolen Dep., 16:6–17, ECF No. 44-2.  Bolen notified Cayetano that his leave was approved,

---

[1] The facts in this section are taken from the parties' 56.1 statements, unless otherwise noted.  Citations to a paragraph in the 56.1 statement also include the other party's response.  The Court considers admitted for purposes of the motion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.  Local Civ. R. 56.1(c).  Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court may disregard the assertion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

*see* ECF No 51-7, and provided him with copies of relevant policies and procedures, which, among other things, informed him that FedEx employees receive job protection for ninety days, and that he would receive a notification prior to the expiration of this period.  Pl. 56.1 ¶ 87; Def. 56.1 ¶ 36.

Cayetano underwent surgery and began medical leave on July 18, 2016, pursuant to the Family Medical Leave Act (the "FMLA").  Pl. 56.1 ¶ 88.  On October 5, 2016, Cayetano's doctor advised FedEx that Cayetano had begun post-operative physical therapy, and that he could return to work with a twenty-pound lifting restriction.  Def. 56.1 ¶ 38; *see also* ECF No. 44-7.

FedEx assumes that an employee's limitations or disabilities are temporary "unless noted as permanent in that employee's medical documents."  Pl. 56.1 ¶ 39.  FedEx offers a Temporary Return to Work Program ("TRW"), and the governing policy states that this program provides temporary placement ("TRW positions") for employees who are temporarily unable to perform the full range of their job duties, but who have been released by their physicians to return to work in a limited capacity.  ECF No. 44-24.  Pursuant to FedEx's TRW policy, Bolen contacted Cayetano's manager, Neil Blyther, and the senior manager of the "JRBA"[2] station, Ramona Oliver, to determine if there was any TRW work available that met Cayetano's lifting restrictions.  Def. 56.1 ¶ 39; *see also* ECF No. 51-14; Pl. 56.1 ¶¶ 42–43.  Oliver responded that Cayetano "can't do anything we need."  ECF No. 51-10.  Bolen then informed Cayetano that there were no TRW positions that met his lifting restrictions.  Def. 56.1 ¶ 41.  Bolen did not look further for available TRW positions for Cayetano.  Bolen Dep. at 70:14-21.  FedEx's communications with Cayetano as to a reasonable accommodation were limited to Bolen initially

---

[2] The parties do not define this acronym.  The Court understands it to be the name of the FedEx station where Cayetano was assigned to work.

telling Cayetano that he would look for TRW positions for him, then later telling him none were available.  Pl. 56.1 ¶ 107.  FedEx did not ask Cayetano to complete a reasonable accommodation request form in accordance with their internal policies.  *Id.* ¶ 109.

Pursuant to FedEx's medical leave policy, by letter dated October 17, 2016, Bolen advised Cayetano that his FMLA coverage was exhausted and warned that his position could be replaced or eliminated.  Def. 56.1 ¶ 52.  Cayetano did not specifically request an extension of his medical leave at this time, Cayetano Dep. at 150:4–8, and FedEx did not offer him any additional leave, Pl. 56.1 ¶ 131.  Bolen's notes indicate that, on November 22, 2016, he told Cayetano there were still no TRW positions that would meet his lifting restrictions.  Bolen Decl. ¶ 15, ECF No. 50.

In a letter dated January 23, 2017, Cayetano's doctor informed Bolen that Cayetano could return to full-time work with no lifting restrictions.  Pl. 56.1 ¶ 138.  Bolen then emailed the JRBA station's management asking whether any positions were available for Cayetano.  Pl. 56.1 ¶ 139; Bolen Dep. 87:16–21.  The management team responded that no positions were open. *See* Pl. 56.1 ¶ 140; Bolen Dep. at 90:8–12.  By letter dated January 30, 2017, Bolen acknowledged Cayetano's ability to return to full-time duty with no restrictions, but stated that no positions were available.  Pl. 56.1 ¶ 143; ECF No. 44-21.  Bolen further stated that, as of that day, Cayetano was being placed on a ninety-day unpaid personal leave to seek a new position. ECF Nos. 51-21, 51-22.  Bolen warned Cayetano that, if "[a]t the end of this 90-day period, if no position is found, [Cayetano's] employment will be terminated."  ECF No. 51-22.

Cayetano alleges that he told Bolen that he was concerned about providing for his family and paying his daughter's educational expenses, and that he asked Bolen how he could access his 401K funds to cover these costs.  Cayetano Dep. at 104–05.  Cayetano claims that Bolen told

him "the only thing [he could] do is resign from the company." *Id.* at 104:6–13.  Cayetano states

that he decided to resign from FedEx at that point because he "felt [he] wasn't treated right." *Id.*

at 104:12–18.  Cayetano did not utilize internal grievance processes or procedures before

resigning from FedEx on January 31, 2017.  *See* Def. 56.1 ¶¶ 4, 6; ECF No. 51-23.

## DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute

as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The moving party initially bears the burden of informing the Court of the absence of a genuine

dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P. 56(c)(1);

*Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002).  If

the non-moving party has the ultimate burden of proof on specific issues at trial, the movant may

also satisfy its own summary judgment burden by demonstrating that the adverse party cannot

produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo,

Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

If the moving party meets its initial burden, the burden then shifts to the opposing party

to establish a triable issue of fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d

at 105.  In doing so, the non-moving party "may not rely on conclusory allegations or

unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation

omitted), as "unsupported allegations do not create a material issue of fact." *Weinstock v.

*Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  In deciding the motion, the Court views the record in the light most favorable to the non-moving party.  *Koch*, 287 F.3d at 165.

"The same standard applies where, as here, the parties filed cross-motions for summary judgment."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).  Thus, even if both parties move for summary judgment and assert the absence of any genuine issues of material fact, "a district court is not required to grant judgment as a matter of law for one side or the other."  *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).  "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Morales*, 249 F.3d at 121 (citation omitted).

The Court must be "cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question," and must "carefully scrutinize[]" the non-movant's affidavits and depositions for "circumstantial proof which, if believed, would show discrimination."  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (quotation marks and citation omitted).  That said, summary judgment is warranted if the opposing party "relies on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct."  *Figueroa v. N.Y. Health and Hosps. Corp.*, 500 F. Supp. 2d 224, 228 (S.D.N.Y. 2007) (quotation marks and citation omitted).  To defeat summary judgment, the opposing party must set forth "concrete evidence from which a reasonable juror could return a verdict in [its] favor."  *Anderson*, 477 U.S. at 256.

II.    Federal Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The parties cross-move for summary judgment on Cayetano's failure to accommodate and disability discrimination claims under the ADA, and FedEx additionally moves for summary judgment on Cayetano's ADA retaliation cause of action. The Court addresses each claim in turn.

A.  Failure to Accommodate

The ADA requires that an employer afford an employee a reasonable accommodation for a known disability unless doing so would impose an undue hardship on the employer. *See* 42 U.S.C. § 12112(b)(5)(A). "Discrimination in violation of the ADA includes, *inter alia*, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)). A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

To establish a *prima facie* case of disability discrimination based on a failure to accommodate, a plaintiff must demonstrate (1) that they have a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of that disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. *McBride*, 583 F.3d at 97. The parties do not dispute the first two elements of the *prima facie* case. Def. Opp'n at 16, ECF No. 52. The Court, accordingly, only examines whether Cayetano could perform the "essential functions" of

his job with reasonable accommodation, and whether FedEx refused to make such accommodations.

### 1.  Essential Function

The parties dispute whether carrying seventy-five pounds is an "essential function" of the DOT handler role.  Pl. Mem. at 15; Pl. Opp'n at 13–14, ECF No. 49; Def. Mem. at 8, 16–17. "Although the term 'essential function[]' is not defined by the ADA, regulations promulgated by the Equal Employment Opportunity Commission ([the] "EEOC") indicate that it encompasses the fundamental job duties of the employment position." *McBride*, 583 F.3d at 98 (quotation marks and citation omitted).  Courts must "give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998).  Courts may also take an employer's written job description as evidence of an essential function.  42 U.S.C. § 12111(8); *see also Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 127 (E.D.N.Y. 2014).  And, although "the inquiry into whether a given work obligation is an essential function is a fact-intensive one," it "can be resolved by summary judgment, if the material facts are undisputed." *Hunt-Watts*, 43 F. Supp. 3d at 128.

Here, FedEx represents that the ability to lift at least seventy-five pounds unassisted was an essential function of the DOT handler position.  Def. 56.1 ¶ 32.  The written job description clearly states this requirement.  ECF No. 51-4.  And, Cayetano's own testimony establishes his awareness of the requirement, and that he routinely was required to "lift up to [seventy-five] pounds unassisted."  Cayetano Dep. 53:14–54:4.  Cayetano does not adduce any evidence contradicting these facts.  The Court, therefore, looks to whether there were any reasonable accommodations that could have enabled Cayetano to perform this essential function.

2.   Reasonable Accommodations

Under the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist with the performance of job duties, and, under certain circumstances, "reassignment to a vacant position."  42 U.S.C. § 12111(9)(B).  Initially, "[t]he plaintiff bears the burden of both production and persuasion as to the existence of an accommodation that would allow [him] to perform the essential functions of [his] employment."  *McBride*, 583 F.3d at 97.  The burden then shifts to the employer to "rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship."  *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 76 (2d Cir. 2016) (citation, quotation marks, and alterations omitted).  Cayetano states that at least three reasonable accommodations were available—first, a transfer to vacant positions with similar qualifications; second, being assigned to light duty, such as scanning work or driving trucks; and third, extending Cayetano's medical leave with position protection.[3]  Pl. Mem. at 18–23.  The Court examines each in turn.

First, Cayetano argues that he could have been reassigned to at least twenty-one vacant jobs at his location.  *Id.* at 23.  A plaintiff seeking reassignment as a reasonable accommodation must demonstrate the existence of a vacant position to which he could have been reassigned.

_____

[3] Cayetano also appears to argue that FedEx could have provided him with another employee's assistance, or mechanical help, which would enable him to lift packages.  Pl. Opp'n at 13.  But, "the burden of persuasion on the existence of an effective accommodation is not satisfied by mere speculation."  *Jackan v. New York State Dep't of Lab.*, 205 F.3d 562, 566 (2d Cir. 2000) (quotation marks omitted).  It is insufficient for Cayetano to suggest he could perform the essential functions of his role with mechanical assistance—he needs to "demonstrate that such a device existed and was available to [FedEx]."  *Id.* at 567.  Similarly, suggesting that the "lifting and handling requirements" of a job may be delegated to another employee is "not a suggestion for reasonable accommodation, since these tasks [are] essential functions of the job."  *Gilbert v. Frank*, 949 F.2d 637, 644 (2d Cir. 1991); *see also McMillan v. City of New York*, 711 F.3d 120, 127 (2d Cir. 2013).

*Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000).  They must also show that they are qualified for that role—that they can perform the job's essential functions.  *McBride*, 583 F.3d at 98.  But, an employer is not required to create a new position or promote a plaintiff to a higher role as a reasonable accommodation.  *Id.* at 98–99 (collecting cases).

Cayetano contends only that the vacant jobs had "substantially similar requirements and/or qualifications to [his] DOT [h]andler position," and that FedEx could have evaluated whether he was qualified for those roles through the interactive process.  Pl. Mem. at 23.  Although it is undisputed that these positions were open, *see, e.g.*, Oliver Tr. at 93, ECF No. 44-12, Cayetano offers no evidence that he was qualified for these jobs, or that he could perform their essential functions.  Moreover, FedEx puts forth at least some evidence that these available roles constituted promotions from Cayetano's position.  *See* Oliver Decl. ¶ 9, ECF No. 48.  Cayetano offers no evidence to the contrary.  He has not, therefore, met his burden of demonstrating that transfer to a vacant job was an available reasonable accommodation.

Next, Cayetano argues that he could have been given lighter tasks required of DOT handlers, such as scanning packages, or moving and parking trucks, for which lifting seventy-five pounds was not a requirement.  Pl. Mem. at 19–21.  Cayetano notes that he and other employees with disabilities previously were assigned light duty after earlier medical leaves, showing that such an accommodation was available.  *Id.*  But, it is axiomatic that a reasonable accommodation can never require the elimination of an essential function of a position—thus, giving an employee "light work" that exempts them from such an essential function goes beyond an employer's reasonable obligation under the ADA.  *Uhl v. Home Depot U.S.A. Inc.*, No. 08 Civ. 3064, 2010 WL 3282611, at *5 (E.D.N.Y. Aug. 13, 2010).  It is similarly immaterial that FedEx previously gave Cayetano or others lighter tasks following medical leave—this supports

10

only that FedEx exceeded their legal obligations in the past, not that they were required to do so again here.  *Id; see also Guerrero Toro v. NorthStar Demolition & Remediation*, 366 F. Supp. 3d 449, 463–64 (W.D.N.Y. 2019).

Finally, Cayetano contends that FedEx could have extended his medical leave beyond October 2016.  Pl. Mem. at 21–23.  "Where there is no indication of when an employee will return, an employer has no obligation to grant an employee an indefinite leave of absence." *Alston v. Microsoft Corp.*, 851 F. Supp. 2d 725, 733 (S.D.N.Y. 2012).  But, a temporary leave of absence, "even an extended leave, can be a reasonable accommodation." *Fernandez v. Windmill Distributing Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) (citation omitted).  *See also Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 201–02 (S.D.N.Y. 1999) ("It is . . . undisputed that the ADA contemplates leaves of absence as a possible reasonable accommodation[.]"). Because Cayetano was fully cleared to return to work with no lifting restrictions within six months of his surgery, *see* Pl. 56.1 ¶ 138, he has established that medical leave of that length would have enabled him to perform the essential functions of his job.  Thus, the burden shifts to FedEx to demonstrate that, "as a matter of law, the accommodation is unreasonable or that it imposes an undue hardship."  *Rogers v. New York Univ.*, 250 F. Supp. 2d 310, 317 (S.D.N.Y. 2002) (citation omitted).

FedEx first argues that Cayetano requested neither extended leave beyond his initial twelve-week FMLA leave, nor position protection.  Def. Opp'n at 20.  But, once FedEx was on notice that Cayetano needed an accommodation—which it was, as a matter of law,[4] *see* Def. 56.1

---

[4] FedEx "construe[s] the doctor's note" as a request for accommodation in light of Cayetano's lack of a formal request.  Def. Mem. at 20.  Courts routinely assume that an employee providing a doctor's note that documents their disability and identifies any limitations that inhibit their work constitutes a request for an accommodation that triggers their employer's statutory obligation to reasonably accommodate that disability.  *E.g.*, *Hardenburg v. Dunham's Athleisure Corp.*, 963 F. Supp. 2d 693, 705 (E.D. Mich. 2013); *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1133–34 (7th Cir. 1996).  FedEx does not appear to dispute that it was on notice of Cayetano's need for accommodations.

¶ 38—they were required to "act proactively and engage in an interactive process to accommodate [him] even if [he] d[id] not request" a specific accommodation, *McElwee v. Cty. of Orange*, 700 F.3d 635, 642 (2d Cir. 2012).  The only evidence that FedEx offers is Bolen's limited communications with Cayetano as to the lack of an available TRW position.  There is no indication that Bolen explored any other accommodations for Cayetano.  Pl. 56.1 ¶ 107.  And, because Cayetano had already requested and received twelve weeks of leave to recuperate from his surgery, FedEx, at minimum, had an obligation to consider, through the interactive process, whether additional leave would have been a reasonable accommodation under the circumstances.  There is no evidence suggesting that FedEx did so.  *See Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 879 (9th Cir. 1989) ("As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.").

FedEx next argues that giving Cayetano additional leave was unreasonable as a matter of law because Cayetano's doctor did not provide a firm date for his return, and any provided leave would, therefore, have been "indefinite."  Def. Opp'n at 20–21.  The Second Circuit has held that indefinite leave , is not a reasonable accommodation.  *Vangas v. Montefiore Medical Center*, 823 F.3d 174, 181 (2d Cir. 2016).  However, a number of courts in this Circuit have reasoned that "a plaintiff's inability to precisely specify the date of return does not make his request for leave unreasonable," particularly when such a date is contingent on a doctor's approval and an improvement in one's medical condition.  *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 204–05 (D. Conn. 2013) (collecting cases).  Courts generally find that a request for leave is unreasonable as a matter of law only where the leave is for an extremely long period of time— exceeding a year at minimum—or when it is clear that even when the employee returns from

such leave, they would be unqualified to perform the essential functions of their role. *Powers*, 40 F. Supp. 2d at 200–01.

Based on the record, there is, at minimum, a triable issue of fact as to whether an extended medical leave constitutes a reasonable accommodation under these circumstances. *See Mullen v. City of New York*, No. 02 Civ. 103, 2003 WL 21511952, at *9 (S.D.N.Y. Jul. 1, 2003) ("Reasonableness [of the length of leave] is usually a material question of fact[.]"). FedEx concedes that it assumes an employee's limitations or disabilities are temporary "unless noted as permanent in that employee's medical documents." Pl. 56.1 ¶ 39. None of Cayetano's medical records suggest that his disability was permanent. Indeed, Cayetano's doctor explicitly contemplated a future return-to-work date following post-operative care, *see* ECF No. 51-6, which constitutes evidence "tending to show that [Cayetano's] leave would be temporary," *Criado v. IBM*, 145 F.3d 437, 444 (1st Cir. 1998). And, it is undisputed that Cayetano was fully cleared to return to work with no restrictions within six months of his surgery—which shows that an extended leave would have allowed him to regain his ability to perform the essential requirements of his position. Pl. 56.1 ¶ 138. Six months of leave is not *per se* unreasonable as a matter of law. *See Powers*, 40 F. Supp. 2d at 200 (collecting cases). Therefore, FedEx cannot establish that extended medical leave was an unreasonable accommodation, nor has it demonstrated that offering this accommodation would have imposed an undue hardship. Accordingly, neither party is entitled to summary judgment at this stage.

### 3. Interactive Process

Cayetano additionally contends that FedEx failed to engage in a good-faith interactive process to determine whether any reasonable accommodations existed. Pl. Mem. at 16–18. "[A]n employer's failure to engage in a sufficient interactive process does not form the basis of a

claim under the ADA," and evidence of such failure "does not allow a plaintiff to avoid summary judgment unless []he also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." *McBride*, 583 F.3d at 101. But, if a plaintiff makes such a showing, "an employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show disability discrimination . . . and that the employer has refused to make [a reasonable] accommodation." *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (quotation marks and citations omitted).

The Second Circuit has noted that an interactive process includes "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 219 (2d Cir. 2001) (citation omitted) (alterations in original). It is undisputed that FedEx's only communications with Cayetano as to a reasonable accommodation were Bolen's two conversations with Cayetano. Pl. 56.1 ¶ 107. It is also undisputed that Bolen did not explore alternative accommodations after confirming there were no TRW positions available at the JRBA station. Bolen Dep. at 70:14–21. FedEx adduces no evidence that it asked Cayetano what he wanted, considered his suggestions, offered alternatives, or even asked him to fill out its standard reasonable accommodations form. Pl. 56.1 ¶ 109. There is, at minimum, a triable issue of fact as to whether FedEx's actions amount to a sufficient "interactive process"—and, should a jury find that extended medical leave was a reasonable accommodation, evidence of FedEx's failure to engage in such a process further supports an inference of discrimination. *See Sheng*, 848 F.3d at 87.

B.  Disability Discrimination

Cayetano brings a claim for disability discrimination under the ADA on the grounds that (1) FedEx constructively terminated him on the basis of his disability; and (2) FedEx took a number of adverse employment actions against him, including denying his request for a reasonable accommodation, putting him on unpaid leave, and replacing him with a non-disabled employee.  Compl. ¶¶ 111–12; Pl. Mem. at 26–27.  Claims for disability discrimination are subject to the *McDonnell-Douglas* burden-shifting analysis.  *McBride*, 583 F.3d at 96.

To make a *prima facie* case, a plaintiff must show by a preponderance of the evidence that "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability."  *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 169 (2d Cir. 2006) (citation omitted).  Again, the parties do not dispute the first two elements.  Def. Opp'n at 16.  And, as discussed, there are triable issues of fact as to whether Cayetano could perform his job with a reasonable accommodation.  *See supra* at 9–13.  The Court, accordingly, looks to whether Cayetano has plausibly alleged an adverse employment action because of his disability.

An adverse employment action is a "materially adverse change in the terms and conditions of employment," which can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities," among other possibilities.  *Sanders v. N.Y.C. Human Res. Admin*., 361 F.3d 749, 755 (2d Cir. 2004) (quotation marks and citations omitted).  A plaintiff can also establish this element by demonstrating constructive discharge— that is, by showing that "rather than discharging [the employee] directly, [the employer]

intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Petrosino v. Bell Atl.*, 385 F.3d 210, 229 (2d Cir. 2004) (quotation marks omitted). "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011). The standard to establish a constructive discharge is high and requires that the employer's deliberate action constitute "something beyond mere negligence or ineffectiveness." *Adams v. Festival Fun Parks, LLC*, 560 Fed. App'x 47, 49–50 (2d Cir. 2014) (citation and quotation marks omitted).

### 1. Constructive Discharge

Cayetano argues that FedEx's actions, including its telling him he could access 401K benefits more quickly if he resigned, amount to a constructive discharge. Compl. ¶¶ 84, 89–90. FedEx responds that Cayetano failed to take advantage of FedEx's internal complaint procedures prior to resigning, which bars his constructive discharge claims. Def. Mem. at 22–23. The Court agrees. "[C]ourts in this [C]ircuit generally have refused to find a constructive discharge where an employee had an avenue through which he could seek redress for the allegedly intolerable work atmosphere leading up to his resignation, but failed to take advantage thereof." *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115–16 (E.D.N.Y. 2002) (quotation marks omitted) (collecting cases).

It is undisputed that Cayetano did not utilize FedEx's available internal grievance procedures prior to resigning. Def. 56.1 ¶¶ 4, 6. This is fatal to his claim of constructive discharge. Cayetano's reliance on *Walsh v. Scarsdale U. Free Sch. Dist.*, is unavailing. Pl. Opp'n at 22 (citing 375 F. Supp. 3d 467 (S.D.N.Y. 2019)). In that case, the court found that the relevant complaint procedures, though facially in existence, were, in fact, unavailable, and thus,

the "mere existence of unviable forms of dispute resolution" did not preclude a finding of

constructive discharge. 375 F. Supp. 3d at 492 (emphasis omitted). By contrast, here, Cayetano

does not demonstrate that the internal redress mechanisms FedEx provided were unavailable, or

otherwise unviable. An employee who "fails to explore alternative avenues offered by [his]

employer before concluding that resignation is the only option cannot make out a claim of

constructive discharge." *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 915 F.

Supp. 2d 498, 506 (S.D.N.Y. 2013) (citation omitted). Cayetano cannot, therefore, state a cause

of action for discrimination or retaliation predicated on a theory of constructive discharge, and

FedEx's motion for summary judgment on such claims is GRANTED.

### 2. Other Adverse Actions

In the alternative, Cayetano argues that other actions taken by FedEx, including filling his

position with a non-disabled employee, and placing him on an unpaid leave in January 2017,

each amount to an adverse employment action because of his disability.[5]  Pl. Opp'n at 20–21.

An employer replacing a plaintiff "with another person possessing the same

qualifications, although not a member of the same protected class as the plaintiff," constitutes an

adverse employment action with the necessary inference of discrimination to establish the fourth

element of Cayetano's *prima facie* ADA case. *Paluh v. HSBC Bank USA*, 409 F. Supp. 2d 178,

190–91 (W.D.N.Y. 2006). Cayetano claims that, when he returned to work in October 2016 with

a lifting restriction, FedEx filled his position with Willie Evans, a non-disabled employee. Pl.

56.1 ¶ 133; *see also* Blyther Dep. at 119, ECF No. 44-10. But, Cayetano has failed to put forth

---

[5] Cayetano also contends that FedEx's failure to offer him a reasonable accommodation constituted an adverse employment action. But, a discrimination claim on this basis is more properly premised under a theory of a failure to accommodate, which the Court addresses *supra*, because "a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action"—rather, it is where that failure to accommodate results in an adverse employment action, such as an employee's termination, that such failure can be the basis of an ADA discrimination claim. *Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).

evidence that Evans had the same qualifications as Cayetano, and that Evans was not disabled. The Court cannot conclude, therefore, that the substitution of Evans for Cayetano amounted to an adverse employment action.  However, placing an employee on unpaid leave is considered an adverse employment action for ADA purposes, *Jamil v. Sessions*, No. 14 Civ. 2355, 2017 WL 913601, at *8 (Mar. 6, 2017, E.D.N.Y.) (collecting cases), which suffices to establish the fourth element of Cayetano's *prima facie* case.

Because there are triable issues of fact as to the third element of Cayetano's *prima facie* case, Cayetano is not entitled to summary judgment.  Assuming *arguendo* that Cayetano is able to establish a *prima facie* case, however, the burden shifts to FedEx to introduce admissible evidence as to a legitimate, non-discriminatory reason for the alleged adverse action.  *Sista*, 445 F.3d at 169.   FedEx appears to argue only that Cayetano was placed on unpaid leave in accordance with its standard policies.  Def. Mem. at 10.  Although "some courts addressing summary judgment motions in ADA claims . . . have acknowledged that uniformly applied leave policies" can provide a legitimate reason for an adverse employment action, "those courts did not exclusively rely upon the leave policies to dismiss the plaintiffs' claims."  *Morse v. JetBlue Airways*, 941 F. Supp. 2d 274, 305 (E.D.N.Y. 2013).  And here, FedEx proffers no evidence that their policies were, in fact, uniformly applied.  *See id.*  Therefore, FedEx has not met its burden of providing a legitimate, non-discriminatory reason for placing Cayetano on an unpaid leave, and for that reason, it is not entitled to summary judgment on this claim.

Accordingly, FedEx's motion for summary judgment on Cayetano's disability discrimination claim is GRANTED to the extent Cayetano asserts such a claim under a theory of constructive discharge, and otherwise DENIED.  Cayetano's motion for summary judgment on his disability discrimination claim is DENIED.

C.  Retaliation

FedEx moves for summary judgment on Cayetano's retaliation claim under the ADA on the ground that Cayetano has failed to establish a *prima facie* case of retaliation.  Def. Mem. at 27–29.  The Court agrees.

The ADA prohibits employers from discriminating against employees "because [they have] opposed any act or practice made unlawful by [the ADA] or because [they] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quoting 42 U.S.C. § 12203(a)).  Claims for retaliation under the ADA are analyzed under the same *McDonnell-Douglas* burden-shifting framework as discrimination claims.  *Lovejoy-Wilson*, 263 F.3d at 223.  To establish a *prima facie* case of retaliation, Cayetano must show "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Treglia*, 313 F.3d at 719.  A plaintiff's burden at this stage is *de minimis.  Id.*  FedEx does not dispute the first two elements, arguing only that Cayetano cannot show an adverse employment action, or a causal connection between that action and the protected activity—here, requesting an accommodation.  Def. Mem. at 28.

As stated, Cayetano cannot establish that his resignation was a constructive discharge, but the Court assumes that his placement on unpaid leave in January 2017 does constitute an adverse employment action.  *See supra* at 17–18.  Causation can be established either directly, through evidence of retaliatory animus; or indirectly, by demonstrating (1) temporal proximity between the protected activity and the adverse employment action, or (2) disparate treatment of

employees who engaged in similar conduct. *DeCintio v. Westchester Cty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).

Here, Cayetano cites only the temporal proximity between his request for an accommodation in October 2016 and being placed on leave in January 2017—roughly three months—as evidence of causation. Pl. Opp'n at 23–24. "Where, as here, a plaintiff relies exclusively on timing to plead causation, the temporal proximity between the protective activity and adverse employment action must be 'very close.'" *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 441 (E.D.N.Y. 2015) (citing *Clart Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). And, courts in this Circuit have generally found that "a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation." *See id.* (collecting cases) (citation omitted); *see also Housel v. Rochester Inst. of Tech.*, 6 F. Supp. 3d 294, 308 (W.D.N.Y. 2014). Absent any other evidence, Cayetano cannot establish causation based on a three-month gap between the protected activity and the adverse action. And, Cayetano offers no other evidence of FedEx's allegedly retaliatory intent. Indeed, in his deposition, Cayetano explicitly stated that he did not feel he experienced retaliation from anyone at FedEx. Cayetano Dep. at 163:21–164:4. Accordingly, Cayetano has failed to establish a *prima facie* case of retaliation under the ADA, and FedEx's motion for summary judgment on this claim is GRANTED.

III.   NYSHRL and NYCHRL Claims

FedEx argues that Cayetano's claims under the NYSHRL and NYCHRL are time-barred, because Cayetano voluntarily executed an employment agreement stating that any legal action brought by him against FedEx must be commenced "within the time prescribed by law, or 6

months from the date of the event forming the basis of this lawsuit, whichever expires first,"[6]
and Cayetano initiated this suit over two years after he resigned from FedEx.  Def. Mem. at 12–
13; *see also* ECF No. 51-2 at 8.  Cayetano contends that there are questions of fact as to the
substantive and procedural unconscionability of this clause that should preclude summary
judgment.  Pl. Opp'n at 24–25.

The doctrine of unconscionability "seeks to prevent sophisticated parties with grossly
unequal bargaining power from taking advantage of less sophisticated parties."  *Spinelli v. Nat'l
Football League*, 903 F.3d 185, 208 (2d Cir. 2018) (citation omitted).  Under New York law, a
contract provision may be deemed unenforceable on unconscionability grounds "only where it is
both procedurally and substantively unconscionable when made."  *Id.* at 208 (quotation marks
and citation omitted), although in "exceptional cases," a provision of a contract can be "so
outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability
alone."  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 12 (N.Y. 1988).  "[T]he
procedural element of unconscionability concerns the contract formation process and the alleged
lack of meaningful choice[, and] the substantive element looks to the content of the contract, per
se."  *Nayal v. HIP Network Services IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)
(citation omitted).

The Court does not find that the contractual limitations period is substantively
unconscionable under New York law.  It is established that "New York courts . . . enforce

---

[6] FedEx does not argue that the six-month limitation bars Cayetano's federal ADA claims, presumably because "[i]f
the parties to a contract intend for a provision to act as a bar to claims brought under federal law, they must
specifically refer to such federal claims, and clearly express the intent to limit the period in which a party could
bring an action based upon federal claims."  *Van–Go Transport Co., Inc. v. New York City Bd. of Educ.*, 53
F.Supp.2d 278, 284 (E.D.N.Y.1999); *see also Friedman v. Raymour Furniture Co, Inc.*, 2012 WL 4976124, at *2
(E.D.N.Y. 2012).  The employment agreement does not specifically refer to the federal claims at issue.  *See Wright
v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998) (holding in ADA context that it would not infer from a
general contractual provision that the parties intended to waive a statutorily-protected right unless the waiver is clear
and unmistakable).

contract provisions shortening the limitations period for bringing any claim against a party,"
*Corbett v. Firstline Sec., Inc.*, 687 F. Supp. 2d 124, 128 (E.D.N.Y. 2009) (emphasis omitted),
where the "shortened statute of limitations . . . is reasonable and agreed to by contract."
*Wechsler v. HSBC Bank USA, N.A.*, No. 15 Civ. 5907, 2016 WL 1688012, at *2 (S.D.N.Y. Apr.
26, 2016) (quotation marks omitted), *aff'd*, 674 F. App'x 73 (2d Cir. 2017).  And, New York
courts have "held that a six-month period to bring an employment claim is inherently
reasonable," even for claims involving discrimination.  *Ortegas v. G4S Secure Sols. Inc.*, 65
N.Y.S.3d 693, 693 (N.Y. App. Div. 2017); *see also Hunt v. Raymour & Flanigan*, 963 N.Y.S.2d
722, 723–24 (N.Y. App. Div. 2013).  On this basis, numerous courts have concluded that
identical contractual limitations are not substantively unconscionable or otherwise unreasonable
under New York law.  *E.g.*, *Hunt*, 963 N.Y.S.2d at 723–24; *Vega v. Fed. Exp. Corp.*, No. 09 Civ.
7637, 2011 WL 4494751, at *6 (S.D.N.Y. Sept. 29, 2011); *Keller v. About, Inc.*, No. 21 Civ. 228,
2021 WL 1783522, at *3 (S.D.N.Y. May 5, 2021).  This establishes, at minimum, that this
provision is not "so outrageous" that it warrants a finding of unenforceability based on
substantive unconscionability alone.  *Gillman*, 73 N.Y.2d at 10.

Because the Court finds that the contractual limitations provision is not substantively
unconscionable, it need not reach Cayetano's arguments as to procedural unconscionability.  *See*
*Chen-Oster v. Goldman Sachs*, 449 F. Supp. 3d 216, 252 (S.D.N.Y. 2020).  Accordingly,
because Cayetano brought his NYSHRL and NYCHRL claims well after the six-month
contractual limitations period expired, those causes of action are time-barred, and FedEx's
motion for summary judgment on these claims is GRANTED.

IV.   <u>Punitive Damages</u>

FedEx argues that punitive damages are not warranted on Cayetano's ADA claims, because Cayetano has not put forth direct evidence of discrimination by anyone at FedEx, and because it has anti-discrimination policies and an internal complaint redressal mechanism in place.  Def. Mem. at 29–30.  To recover punitive damages, a plaintiff must show that the defendant acted with malice or reckless indifference to his rights under the ADA.  42 U.S.C. § 1981a(b)(1).  "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination," that is, showing an employer "discriminate[d] in the face of a perceived risk that its actions w[ould] violate federal law."  *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999).  Accordingly, contrary to FedEx's assertions, Cayetano need not proffer direct evidence of discrimination to demonstrate entitlement to punitive damages.

Similarly, the fact that FedEx maintains anti-discrimination policies and procedures by itself does not militate against an award of punitive damages.  Indeed, the existence of such policies and procedures more tends to support that FedEx was aware of its obligations under federal law, thus supporting an "inference of the requisite mental state" necessary to award punitive damages.  *Zimmermann v. Assocs. First Cap. Corp.*, 251 F.3d 376, 385 (2d Cir. 2001).

As discussed, there are triable issues of fact as to Cayetano's failure to accommodate and disability discrimination claims.  Should a jury resolve those factual disputes in Cayetano's favor, they could also reasonably find FedEx's actions were evidence of an intent to discriminate against Cayetano because of his disability.  And, "[a]lthough a higher morally culpable state of mind is generally required for an award of punitive damages under federal . . . antidiscrimination law than for a finding of liability, much of the evidence used to support a finding of intent is also

probative of reckless disregard of a plaintiff's rights." *Greenbaum v. Handelsbanken*,

67 F. Supp. 2d 228, 262 (S.D.N.Y. 1999).  It would be reasonable for the jury to consider such

evidence as a basis for awarding punitive damages.  There is, accordingly, no basis to find at this

stage that punitive damages are unwarranted as a matter of law, and FedEx's motion for

summary judgment on this ground is DENIED.

## CONCLUSION

For the reasons stated above, FedEx's motion for summary judgment is GRANTED as to

Cayetano's ADA constructive discharge and retaliation claims, and his NYSHRL and NYCHRL

claims, and otherwise DENIED.  Cayetano's cross-motion for partial summary judgment is

DENIED.

SO ORDERED.

Dated: July 6, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge